UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2007 JAN 23 PM 1: 53

CLERK ___Rw___
SO. DIST. OF GA.

**MARUBENI AMERICA CORPORATION**
    Plaintiff,

and

**MG FORESTS PTE. LTD.,**
    Intervening Plaintiff,

and

**AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC.**
    Intervening Plaintiff,

and

**O.E. DURANT, INC.,**

    Internvening Plaintiff,

v.                      406CV245

**M/V TRINITY SIERRA, her engines, tackle and boilers, etc. in rem,
NAVSHIP MARITIME CO., LTD., and
THESARCO SHIPPING S.A.,**

    Defendants.

### ORDER

### I. INTRODUCTION

Plaintiff Marubeni America Corp. brought this action against the Cypriot merchant vessel *Trinity Sierra*, the vessel's owner, Navship Maritime Co., Ltd., and the vessel's management company, Thesarco Shipping S.A., which was identified on Marubeni's bill of lading as the carrier of the cargo. Doc. ## 1, 13, 52. After the Court ordered the *Trinity Sierra* arrested (doc. # 6) MG Forests Pte. Ltd. (MG Forests), the American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club"), and O.E. Durant, Inc. filed intervening complaints. Doc. ## 29, 37, 55, 60.

Subsequently, Marubeni settled some of its claims against the defendants and released the *Trinity Sierra* from arrest, with MG Forests taking over as the arresting party. Doc. # 59. Now, MG Forests and the defendants have settled their entire dispute. Doc. # 96. Before the Court are

(a) American Club's motion to file a foreign money judgment, doc. # 61;

(b) The joint motion of the defendants and MG Forests to dismiss all claims and counterclaims with prejudice, doc. # 96; and

(c) American Club's motion to maintain arrest of the *Trinity Sierra*, doc. # 95.

### II. BACKGROUND

#### A. Marubeni's Claims

In 5/06 Marubeni and Navship entered into a contract for the bulk delivery of sugar from Taiwan to Savannah. Doc. # 1 at 2, ¶ 7.[1] The contract called for delivery of the sugar in Savannah between 8/1/06 and 8/31/06. *Id.* at 3, ¶ 9. The delivery date was especially important because the U.S. Department of Agriculture program the sugar was to be imported under provided that the sugar might be barred if it arrived after 9/30/06. *Id.* at 3, ¶ 12.

---

[1] The contract was a charter party; "A contract by which a ship, or a principal part of it, is leased by the owner, esp. to a merchant for the conveyance of goods on a predetermined voyage to one or more places...." BLACK'S LAW DICTIONARY 251(8th ed., 2004).

Though the contract provided for an eastbound route across the Pacific and through the Panama Canal to Savannah, the defendants sent the *Trinity Sierra* westward, via the Indian and Atlantic Oceans, to a previously unmentioned stop in Lagos, Nigeria. *Id.* at 4, ¶¶ 14-15. In Lagos, the defendants lacked sufficient funds to pay the necessary fees to allow discharge of Lagos-bound cargo, so on 8/18/06, Marubeni lent defendants $210,295.09 to facilitate discharge of the Lagos cargo and get its sugar to Savannah before the approaching 9/30 deadline. *Id.* at 5-6, ¶¶ 17-20.

On 9/13/06, the *Trinity Sierra* completed its delivery in Lagos and set sail for Savannah. *Id.* ¶ 24. The *Trinity Sierra* arrived in Savannah on 10/2/06 -- after the U.S.D.A. deadline -- and could not be unloaded because Navship and Thesarco failed to pay for necessary tugs, pilotage, wharfage, etc. *Id.* at 7, ¶ 27. Marubeni advanced defendants an additional $47,088 to facilitate discharge of the sugar cargo. Doc. # 13 at 8. Marubeni sustained further damages as a result of the delay in and other problems with the discharge of the sugar. Doc. # 52 at 8-9.

Marubeni claims a breach of maritime contract and a breach of the warranty of seaworthiness. Doc. # 1 at 8-10. Additionally, Marubeni requests that pursuant to the maritime contract this Court order all claims arbitrated in New York. Doc. # 1 at 11.

### B. American Club's Claims

The American Club is a mutual insurance association. Doc. # 60 at 2. Prior to 10/1/06, American Club provided insurance to both Thesarco and Navship, including insurance on the *Trinity Sierra*. *Id.* at 3. The American Club claims that Thesarco and Navship owe $117,208.97 in unpaid expenses for the insurance covering the *Trinity Sierra*. *Id.* at 5. In addition, the American Club claims that Thesarco owes $550,796.21 in expenses related to insurance coverage of other ships. *Id.* at 6 (Count III). Finally, the American Club seeks to satisfy a money judgment from England against a Thesarco alter ego in the amount of £309,839.98 plus interest. *Id.* at 8 (Count IV).

### III. ANALYSIS

The Court must first sort the claims into the proper admiralty-jurisdictional bins. The Supplemental Rules for Certain Admiralty and Maritime Claims (hereinafter "Rules") -- supplemental to the Federal Rules of Civil Procedure -- operate to allow a party aggrieved in admiralty to sue the ship's owner *in personam* and attach the ship as security for the claim (Rule B), or sue a ship directly *in rem* (Rule C). Where a claim can be pursued under Rule C, it can simultaneously be pursued under Rule B. *See* Rule C(1).

Several claims qualify to be pursued under Rule C against the *Trinity Sierra* itself. "An action in rem may be brought ... [t]o enforce any maritime lien...." Rule C(1)(a).

> A maritime lien is "[a] special property right in a ship given to a creditor by law as security for a debt or claim subsisting from the moment the debt arises[.]" *Galehead, Inc. v. M/V Anglia*, 183 F.3d 1242, 1247 (11th Cir. 1999) (alterations in original) (quoting *Black's Law Dictionary* 969 (6th ed. 1990)). The Maritime Commercial Instruments and Liens Vessel Identification Act ... provides that "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner ... has a maritime lien on the vessel." 46 U.S.C. § 31342.

*Dresdner Bank AG v. M/V Olympia Voyager (Dresdner III)*, 465 F.3d 1267, 1272 (11th Cir. 2006). Courts must look to the law governing the claim to determine whether a maritime lien exists. *Dresdner Bank AG v. M/V Olympia Voyager (Dresdner I)*, 446 F.3d 1377, 1384 (11th Cir. 2006). The Court will apply U.S. law and request that any *relevant* choice-of-law questions be brought to the Court's attention in a motion for reconsideration.[2]

A maritime lien arises in tort cases "looking to the ship itself ... as the means and instrumentality of the mischief," and in contract cases "for the supplies and repairs [the ship] must of necessity obtain on her own account." 2 BENEDICT ON ADMIRALTY § 21, at 2-2 (7th ed. 2005). In these cases, it can be said that the ship itself was an actor, and not merely an instrumentality of its owners. *See* OLIVER WENDELL HOLMES, JR., THE COMMON LAW 26-27 (1881) ("A ship is the most living of inanimate things.... It is only by supposing the ship to have been treated as if endowed with personality, that the arbitrary seeming peculiarities of the maritime law can be made intelligible, and on that supposition they at once become consistent and logical").

Under U.S. law, a ship is deemed to be itself liable on contracts for necessaries. 46 U.S.C. § 31342. In addition, a ship can be liable *in rem* for certain breaches of charter parties. *See Int'l Marine Towing v. S. Leasing Partners*, 722 F.2d 126, 132 (5th Cir. 1983) (the breach of a bareboat charter can give rise to a maritime lien). Thus, the Court must determine which claims in this case involve the provision of necessaries or the breach of a charter party.

> The term ["necessaries"] has been liberally construed to include what is reasonably needed in the ship's business, such as goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function. Necessaries are the things that a prudent owner would provide to enable a ship to perform well the functions for which she has been engaged.

*Bradford Marine, Inc. v. M/V Sea Falcon*, 64 F.3d 585, 589 (11th Cir. 1995) (quotes and cites omitted).

Marubeni provided the *Trinity Sierra* with funds to dock and unload in Lagos and Savannah. These loans, provided to allow the *Trinity Sierra* "to perform well the functions for which she ha[d] been engaged," *id.*, constitute necessaries and thus recovery can be pursued under Rule C.[3] Similarly, the American Club's claims for unpaid expenses related to insurance coverage for the *Trinity Sierra* can be deemed to fall within the Eleventh Circuit's liberal construction of the term "necessaries." Those claims therefore can also proceed pursuant to Rule C.

The American Club's claims against Thesarco for other ships' insurance expenses, however, as well as the claim on an unsatisfied foreign money judgment, are unrelated to the *Trinity Sierra*. These contracts "did not help the [vessel] perform her function" and thus "cannot constitute repairs, supplies or services for which the ship can be held liable *in rem*." *Id.* (quoting

---

[2] A choice-of-law question is only relevant where a conflict of laws exists. *Dresdner I*, 446 F.3d at 1381. For Rule C purposes a conflict of laws exists where U.S. law and foreign law differ on the question of whether a certain claim gives rise to a maritime lien. *See id.*

[3] Marubeni has settled some of its *in rem* claims, but has not notified the Court which claims. Doc. # 63 at 2.

3

2 BENEDICT ON ADMIRALTY § 35, at 3-24 (7th ed. 1995)). Nor are American Club's additional claims for the breach of a charter party (the other route to a Rule-C, *in rem*, maritime-lien claim). Thus, Rule C cannot be invoked for American Club's additional claims.

Thus, the American Club must resort to Rule B to advance these claims. Rule B states that "a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property -- up to the amount sued for -- in the hands of garnishees named in the process." Rule B(1)(a). This procedure for attaching personal property may be used when "the defendant cannot be found within the district." Rule B(1)(b).

Thus, for a Rule B attachment to supply an *in personam* route for a claim, the defendant's "tangible or intangible personal property" must be found in the district, while the defendant himself must not. Rule B(1).

The problem for American Club, however, is that, according to the information before the Court, the *Trinity Sierra* is the property of Navship, not Thesarco. Doc. # 57. If this information is correct, American Club cannot pursue Rule B jurisdiction over Thesarco via the *Trinity Sierra* because Thesarco holds no ownership interest in the *Trinity Sierra*. *See* doc. # 57 (Navship's claim to sole ownership of *Trinity Sierra*); doc. # 55 at 9 (MG Forests's Complaint noting that the *Trinity Sierra* is "owned by Navship and managed by Thesarco").

The parties are ordered to brief the Court within 15 days, with supporting evidence, as to why a fact-finding should not be made that Thesarco has no ownership interest in the *Trinity Sierra*, and the related ruling of law that the Court has no jurisdiction over claims against Thesarco.

Thus, the American Club's motion to allow filing of a foreign money judgment against Thesarco, doc. # 61, is **DEFERRED**, as it is not clear that the Court has jurisdiction over claims against Thesarco.

## IV. CONCLUSION

Accordingly the Court Orders the following:

(a) The motion to file a foreign money judgment is **DEFERRED**. Doc. # 61. The parties are to brief the Court within 15 days, with supporting evidentiary materials, as to why a fact-finding should not be made that Thesarco has no ownership interest in the *Trinity Sierra*, and the related ruling of law that the Court has no jurisdiction over claims against Thesarco.

(b) The joint motion of M/V TRINITY SIERRA, Navship Maritime Co., Thesarco Shipping SA, and MG Forests to dismiss all claims and counterclaims with prejudice is **GRANTED**. Doc. # 96. MG Forests's complaint, MG Forests's amended complaint, and defendants' counter-claim against MG Forests are **DISMISSED WITH PREJUDICE**. Any costs associated with MG Forests's arrest of the *Trinity Sierra* shall be borne, pursuant to joint agreement of the parties, jointly and severally by the defendants and shall be paid, under threat of sanctions, by 1/31/07. Doc. # 96 at 2. The M/V TRINITY SIERRA is hereby released from MG Forests's arrest. For docket clearing purposes, the following motions are **DENIED** as moot: Doc. ## 53, 58, 62, 63, 80, 82, 85, 87, and 88.

(c) American Steamship Owners Mutual Protection and Indemnity Association, Inc.'s motion to maintain arrest of the *Trinity Sierra*,

4

is **GRANTED**. Doc. # 95. The American Steamship Owners Mutual Protection and Indemnity Association, Inc. shall be responsible for fees associated with the arrest of the *Trinity Sierra* accruing after the date of this Order.[4] Mr. H. David Scott shall remain as the substitute custodian.

This 23 day of January, 2007.

*/s/ B. Avant Edenfield*
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[4] Custodian H. David Scott informed the Court by letter that expenses are approximately $3580/day, with the additional possibility of shifting expenses.